at all. Arguments not to receive 15 minutes per side. Ms. Gretchko for the appellants. May it please the court. My name is Lisa Gretchko. I'm from Howard & Howard Attorneys in Royal Oak, Michigan and I reserve two minutes for rebuttal. Thank you. Your Honors, this appeal concerns an order approving the tribe's settlement with the litigation trustee and that order contains a very broad claims bar that wipes out even the tribe's contractual obligations to my client, the Papas' and Gutzeris' who are the non-settling defendants and we've objected to this claims bar. This is an unprecedented use of a claims bar and we ask that the court remedy the error. We have two requests for this court to clarify that the claims bar does not encompass contract claims. The sanctity of contracts is a fundamental right. It's actually in the Constitution. Article 1, Section 10 says that the state cannot pass a law that impairs the obligation of contract. There's no case in all this paper, no case that... I don't understand how we clarify some other court's order. I understand how we affirm it. I understand how we reverse it. But how do we clarify what a district judge mender didn't mean? Well, if clarification doesn't work, then perhaps reversal with an order to revise it to carve out the contract claims from authority. Do you have any authority that we clarify things? Standing here... Strikes me it's generally not our job. Well, then I would ask for reversal for the purpose of the claims bar. So you don't have any authority to clarify? I do not standing here today, Your Honor. I would ask them for reversal to undo the portion of the claims bar that applies to my client, or at a minimum, to say that it doesn't block the bringing of contract claims. Let me put it in perspective. If Ford Motor Company were to sue a Tier 1 and a Tier 2 supplier, and then it settles with the Tier 1 supplier, that settling Tier 1 supplier is not entitled to a claims bar order that blocks the Tier 2 supplier from bringing contract claims. What you call contract claims, as I understand, there is other litigation going on in which you have brought claims which the district court decided on the merits, at least at this stage. Is that the claim that you're concerned about, or is that the kind of claim that you're concerned about? In other words, is that the only claim that you put under the rubric of contract, or are there other potential contract claims as well? For the record, Your Honor, the Pappases were not parties to that lawsuit that the Getzeros has brought. The Getzeros has brought it because they had unpaid amounts owing to them. Judge Borman felt that his claims bar was so broad that it would even bar the Getzeros from pursuing those unpaid claims. Thankfully, the tribe did not interpret the claims bar that broadly, and they let those be brought. So as to the Pappas defendant, they're completely outside Well, you say they let that be brought, as I understood it from the public record. The judge then decided at least some portions of it on the record on the merits. The judge, there is a ruling below that will be back before this court in the not too distant future because the issue below, Judge Borman ruled that a concession had been made, though the Getzeros' counsel says there was no such concession made. And therefore, there's going to be an appeal. The Getzeros' do intend to appeal. I see your distinction between Pappas and Getzeros. Does Pappas have any contract claims that he wants to bring that he feels are barred? Oh, yes. Pappas was also, Mr. and Mrs. Pappas were third-party beneficiaries of that same guarantee, and that guarantee contains a waiver of sovereign immunity, and it runs to them. Guarantee claims are not even ripe until there's a loss. And what's interesting is that in the pleadings below and to this court, the opponent You say they're third-party beneficiaries. They're not guaranteed directly in the way that Getzeros is? They are guaranteed directly in the way that Getzeros is, but that guarantee arises from a whole separate transaction from the one that is being litigated in the adversary proceeding. The guarantee was granted in the year 2000 to Monroe Partners, and Monroe Partners were redeeming out Pappas and Getzeros, and Pappas and Getzeros were made third-party beneficiaries. But it's a separate transaction altogether. So that's our first prayer for relief. But do Pappas and Getzeros stand in any different relationship from each other? Vis-a-vis that guarantee? Right. No, Your Honor, they don't. Thank you. Our second request is that the court reverse and remand to require the district court to have an evidentiary fairness hearing after the conclusion of discovery in the adversary proceeding. The threshold issue here is whether it's fundamentally unfair to bar future claims of Pappas and Getzeros at this early point in discovery in the underlying case. The district court effectively dismissed all of our client's potential claims by holding them to a summary judgment standard rather than the standard that this court set forth in McDonald v. Star Bank, which is, does a claim even exist? The facts are quite apparent from the pleadings. My clients are four individuals, actually three living, one deceased. We were sued for $144 million. The tribe was sued for $175 million. The complaint alleges that the tribe received an indirect benefit from the payments made to our clients. When you say sued here, this is by the trustee? By the trustee, correct. In the year 2010, when the lawsuit was brought, the Pappas and Getzeros defendants and the tribe entered into a joint defense agreement. For years, we shared strategies, developed theories, and shared research. We were a defense team with a close working relationship. Unbeknownst to us, while the tribe was in our joint defense agreement, they engaged in private negotiations with the trustee, which certainly they're entitled to do, but they spanned a four-to-five-month period, and they reviewed hundreds of pages of documents. We've asked for those documents. They've never been provided. The settlement motion was filed on April 13th, took us completely by surprise, and we were shocked. There was no mention made in that initial phone call of the claims bar. The settlement motion admits that several of the legal issues in this case are issues of first impression and that it took the trustee a really long time to analyze his rights and strengths and weaknesses of his case on the indirect benefit theory on a complaint that had been pending for years and that they drafted. So we objected. We raised several issues. We said, look, this indirect benefit theory, if they're abandoning it, we would like to see the investigation. We specifically objected to the barring of our future claims, and for the sake of argument, we said, well, our future claims might consist of contribution, indemnity, fraud, and deepening insolvency. We asked in our objection for that evidentiary fairness hearing, and it was never held. I know they've held this court otherwise in their appellate briefs, but Judge Borman, in his opinion, at pages 13 and 28, says he didn't have to hold the evidentiary fairness hearing. Well, let's talk about what hearing was held and what hearing that you wanted that might be different. I thought that there was a hearing that's been described as an evidentiary hearing on June 27, 2012. It was a hearing. Were you barred? Did you attempt to introduce evidence? It was supposed to be a hearing on the merits of the settlement. Did you attempt to introduce evidence that you were not able to, that now you say is part of the problem? We were sandbagged at that hearing. Did you attempt to introduce evidence? It's not a hard question. We cross-examined the witness that was presented, yes. All right, so I take that. You didn't try to introduce evidence. Now, you lose. Then there's a motion for reconsideration, and then I'm gathering you want another hearing? We do want another hearing, Your Honor. Now, why do you get another hearing in connection with a motion for reconsideration, when there was an evidentiary hearing already on June 27? That hearing... What's the matter with that process? First of all, the court, that was the initial hearing on the settlement motion itself. We anticipated that there would be a future evidentiary fairness hearing based on the Sixth Circuit precedent in McDonald. That hearing, we thought, would consider the four bankruptcy prongs of approval of a settlement. Let me interrupt you for just a second. In your pleadings and in your argument today, there's lots of discussion about, we were sandbagged, we were surprised, we thought, we expected, we hoped, all this kind of stuff. It's kind of hard for us to define what you hoped and why we care. So, there was a hearing. Why is that hearing not adequate, if you cross-examined the witnesses and you had an opportunity and declined to introduce evidence? Why do you get another one? The guarantee was, the court was misled at the hearing below. They never brought up the guarantee until that hearing. We heard the word guarantee at the hearing and thought, what are they talking about? Which guarantee are they talking about? It's from a separate transaction. Their pleadings below told the court... Did you ask that the hearing be continued because you wanted to look into something further? We asked that the settlement motion be denied. We asked for a fairness hearing at the hearing. Could we kind of focus here on answering the question instead of reframing the question and then answering something else? Did you ask to have the hearing continued because something came up that you were not prepared to address at the hearing? There was no formal request for adjournment made, as I've read the transcript. However, what was said on the record was that we asked for the evidentiary fairness hearing. And why was this hearing not an evidentiary fairness hearing? That's what I've been trying to ask you for the last five minutes. What was it if it wasn't that? It was a hearing to consider the merits of the settlement. The notice of the hearing did not... How is that different from an evidentiary fairness hearing? The hearing... Because the merits of the settlement would go to the four bankruptcy prongs of whether the settlement meets the threshold under Rule 9019. And this hearing went way beyond... We expected this hearing to focus on that and then make a scheduling order. We'd had no discovery. We had not even been furnished with the hundreds of pages of analysis that the tribe did... I'm sorry, that the trustee did. So we had no discovery going into something called an evidentiary fairness hearing? Had you sought discovery? Yes. And had you filed a motion to compel if you didn't get what you sought? We had sought discovery and it was not forthcoming. Had you filed a motion to compel if you didn't get the discovery? No, Your Honor. Okay. Thank you. We still maintain that we're entitled, though, to that fairness hearing. There was already an uneven playing field. What happened is that after the initial hearing that was held, the guarantee... We went back to the office, the word guarantee came up for the first time at that hearing, and people started looking through the 10 years' worth of transactional documents to figure out what they were talking about. And mind you, they told the court there was no basis for contractual indemnity, though that's exactly what this guarantee was. When we brought it up and it contains a waiver of tribal sovereign immunity, we promptly furnished it to the court and Judge Borman said no. And he used a summary judgment standard both at the hearing that was conducted and in the motion for reconsideration. The cases that he recites were summary judgment cases, and he said he was not going to consider it any further. And so that's why we're here. Your Honors, if the claims bar order below stands, the legal ramifications are significant. They're large. It would open the floodgates, we believe, to litigants settling their cases and be able to get a claims bar to protect them from contract claims that belong to a co-defendant over their objection and for no consideration. And that's what happened here. That will seriously affect the way people conduct business in this country. So we're asking that that part of the order below be reversed so that this case does not capture contract claims. And also, like this Court did in the McDonald case, this Court should remand here because the district court did not hold the evidentiary fairness hearing. And it said it didn't, by the way, in its own opinion. It said that wasn't the evidentiary fairness hearing on pages 13 and 28. The judge said he didn't have to because he didn't feel that there were viable claims, but he measured them through the prism of a summary judgment standard, which is too high a standard when McDonald says that you use whether claims even exist. I reserve my time for rebuttal. Thank you very much. Hang on, Counselor. Ma'am, first, do my colleagues have any further questions? I have a question, if I may. Let me understand. What you seek as relief is that the Court find that the claims bar should be essentially reversed. The matter remanded to the district court. That claims bar was critical to the settlement between the litigation trustee and the tribe. Therefore, the entire settlement would be set aside. Then, you propose that an evidentiary hearing be held at some future point where your clients have had a full opportunity for discovery. Am I reading your request accurately? Yes, however, they have trotted out releases. They have releases that they claim were signed in 2005. It's not at all clear. Signed by whom? By our clients. Okay. In connection with the refinancing transaction that is the subject of the adversary proceeding, the one where they want to claw back the $144 million. It is not at all clear that the claims bar is, in fact, essential to the tribe's financing. My clients are being sued for Well, they say it is, right? They've said it, but it's not at all clear because they also have releases that they put in Mr. Mattson's declaration and said, we've got these releases. So if they've got those releases, it's not clear why they also need a claims bar. It's not clear to us why they're fighting so hard for this claims bar if, in fact, they have sovereign immunity. These releases, they were signed in 2005. We haven't yet been told to or actually paid back the money that was the consideration for those releases. My clients are being sued for $144 million. Where is the protection for them? Why are our future claims being barred? First time you've mentioned releases. Releases by your clients, that is, where they release all claims against the tribe? In connection with the 2005 refinancing transaction and the money that we got from Monroe Partners, there was a release signed. However, if the money gets given back, the consideration for the releases fails and the releases get undone and that triggers the guarantee obligations. So you are saying that there are such releases and they were signed, but you believe they could be unwound. Correct. The consideration for them will fail if there's an adverse ruling on the adversary, which we truly hope won't happen. We've had two summary judgment motions pending for a long time. My question is, with respect to your first claim, that contractual claim shouldn't be by the bar order. If you prevailed on that, whether you call it clarification, remand, vacation or whatever, but if you prevail on that conceptual point, then do you still need the fairness hearing? We believe we do, Your Honor. Because? Because we believe we have viable potential claims that wouldn't sound in contract and that it's unfair to bar those from us. Those claims would be in contribution or indemnity or in what? Contribution, indemnity, those would be some examples of them, possible unjust enrichment claim, and yes, the complaint alleges a unified injury in paragraph 43 of the complaint. It alleges that the payments made that my clients received benefited the tribe. So they set up the individual, I'm sorry, the indivisible injury. And in terms of the special relationship, there's all sorts of transactional documents that do create a special relationship here. That's good enough, Counsel. You'll have your time for rebuttal. Thank you. Are you both going to argue and how would you divide? We are, Your Honor. Grant Cowan on behalf of the tribe. I'm going to take 12 of the allotted 15 minutes. My colleague, Mr. Applebaum, will take three of those minutes. Let me talk first, let me start by talking about the evidentiary hearing and what the evidentiary hearing was for on June 27. That was really, I think, it was twofold. First, the bankruptcy court had to assure itself under the rules applicable that the settlement payment of $6 billion was appropriate and adequate. And as you know from the filings, the litigation trustee had sued my client for about $155 million. My client only received $6 million. So there was a huge trunk of money that my client never received that they sued for under what's called an indirect benefit theory. The guarantee goes to the heart of that indirect benefit theory. So the guarantee was a central focus of the evidentiary hearing with respect to at least that part. And that's because the trustee's theory that they could recover this ton of money that we never received was that when Pappas and Gaceros received it, it eliminated our obligation under the guarantee. The guarantee has never been triggered. That's not in any serious dispute. Let me talk a little bit about the guarantee and then I'll talk about the second aspect of that hearing. At the time that the guarantee was entered into, in 2000, my client, the tribe, had contributed over $100 million to the Greek town casino, the casino that went bankrupt some five years later. The guarantee therefore was very limited. It would only apply if the tribe received distributions from the casino in future years in excess of an agreed upon floor. That floor never came close to being met. And that was why the trustee recognized after that was demonstrated to them that the case really was a $6 million case, not a $155 million case. And therefore we settled for about half of that $6 million. And so that issue was a focus not only of the hearing, but of the briefs. Council says that they were sandbagged the first time they ever heard of the guarantee being an issue was when they showed up at the hearing. On the very first page it says this, talking about this indirect theory, it says this theory was based upon the litigation trustee's belief that the tribe defendants had guaranteed certain obligations to Inter Alia, the Pappas and Getzeros defendants, and therefore the transfers to the Pappas and Getzeros defendants benefited the tribe defendants by reducing their exposure on these guarantees. May 29th, the hearing is held on June 27th. That guarantee was discussed at the hearing. It was discussed by the litigation trustee who actually testified, Lee Buchwald, and as Council for the trustee will indicate in his remarks, it was specifically discussed in argument. And in fact, in a way that is palpable. Mr. Applebaum said at the hearing, and since that time, as Mr. Buchwald testified, our analysis of the indirect benefits, we determined that the guarantee exposure didn't exist. And therefore there was no indirect benefit because if there's no guarantee, there's no reduction in exposure that would suffice under Sixth Circuit law. He went on to say that there could be... When he says guarantee exposure, that is the exposure of the tribe to pay to the Pappas and Getzeros. Exactly. So if there's no, if it has not been triggered, there is no exposure, they don't have a claim for the chunk of money that we never got, and they have no claim. So if there is no exposure, why is the tribe insistent on having that exposure barred by federal court action? We are asking for what is a fairly common bar order that bars claims by a non-settling defendant for contribution, indemnity, and other claims. And in the Mumford case, Judge Boggs, that we cited, that case, it's an Eleventh Circuit case, but it's very much relevant. It's an adversary proceeding involving fraudulent transfers where a settling defendant asked for a settlement bar order. And they said bar orders play an integral role in facilitating settlement. This is because defendants buy little piece through settlement unless they are assured they will be protected against co-defendant's efforts to shift their losses through cross-claims for indemnity, contribution, and other causes related to the underlying litigation. Okay. Now isn't the, in a sense, isn't the and other causes, that is, you're right that bar orders having to do with contribution and indemnity are fairly common, but at least, although there's some authority both ways, the generic bar orders that might bar a lot of other kinds of claims are not common. And so what is your interpretation of the and other causes? I don't, respectfully, I don't think I would throw this into that other. I would say this is an indemnity claim. It is a contractual indemnity claim. Their whole basis, and what they say is, they don't have exposure unless they're obligated to pay it back, in which case they can seek indemnification from us through the contractual indemnification claim. For a contractual claim, not the kind of contribution that you have in co-tort fees. That's correct. And what I would submit to you, Your Honor, is the reason, responding directly to your question, the whole reason the tribe found itself in a need to settle this case. We have a pending, and has been pending, motion for sovereign immunity that was argued, the bankruptcy court never ruled upon it. The tribe needed to refinance its debt. It was unable to do so, and there's the affidavits in the record to that effect because of the pending claims. And it is believed by the tribe, and I think probably fairly so, that it needed a firm borrower to be able to go to the lenders and say, look, as it relates to the 2005 transfers, we are protected, we are done, this litigation is over. Let me ask you this, obviously this is complicated and we're trying to figure out how to treat it conceptually. If you had a situation where a person that a bankruptcy estate is making claims against wants to settle, that says, look, in order for me to settle, I need some money for mortgaging my house, and I've got a real estate fight going on, and people won't loan me money because of that real estate fight. Could we say the bankruptcy court could bar his adversary in the real estate fight in order to get the financing to pay the bankruptcy? I mean, conceptually, that's the case the other side is putting forward, and so I'm really asking you two things. Could they, because it would be within their power, and secondly, is this case analogous to that hypothetical? I would say yes and no. So, the answer is yes, it is within the power under Bankruptcy Code 105 section that says the court has the power to take actions to effectuate for the benefit of the estate. But that's got some relating to language in there, doesn't it? The second part, I understand and I appreciate you're stretching a point to make a point, but that's not this case. This is not some, the whole point is they weren't asked to come up and dredge up any claim they might have. It is the borrower relates to and is limited to those claims that arise from or relate to the 2005 transfers of the adversary proceeding. This is tied directly to that, and to Judge Beckwith's point, it is a fundamental critical aspect of the settlement, and if this thing is unwound, then the settlement is unwound. With my remaining time, I do want to talk- The bar of order language itself seems to say what you said in the first, say, two-thirds of that paragraph, but then it ends by saying these barred claims include, but are not limited to, any and all claims arising out of or reasonably flowing from the transfers which are the subject of this MUFTA adversary proceeding. The MUFTA adversary proceeding is what you refer to as the 2005 transfers, right? Yes. So it seems to say, at least in the last sentence on its face, that yes, those are barred, but it includes, but it's not limited to those. No, I- So that's where we're trying, where at least I'm trying to figure out the propriety of the language that seems to go beyond what flows from the 2005 transfer. No, I don't believe it does. I think the last sentence is just making it clear that claims that would reasonably flow out of that, those 2005 transfers are covered. Why would it, to make it clear, would it add, and by the way, we meant that it includes not only that, but it's not limited to that. How does that make it more clear? Let me just pull out the- Starting with these barred claims include, but are not limited to, at the end. I think that it's making it clear that it relates to the transfers, in the above sentences it's talking about the MUFTA adversary proceedings, and we're making it clear that it relates to the 2005 transfers. But the tribe entered into a guarantee in 2000, did it not? I mean, that guarantee got shifted around, but the guarantee predates the 2005 transfers, does it not? It does. It does. And so, in what sense are the tribe's obligations under the guarantee flowing from the 2005 transfers? The whole basis is, if they are obligated to return funds to the trustee, there is a provision that is essentially a clawback, so they arise as a result of the adversary proceeding. They got the money, so if they're not forced to pay the money back, leave aside whether or not the guarantee was ever triggered, if it wasn't, there's not going to be any claim unless they're forced to give it back, so it arises out of the fact that they would be obligated to give it back in the MUFTA or M-U-F-T-A adversary proceeding. So the transfer subject to the MUFTA proceeding is the clawback? I'm sorry? So the transfer that relates to the MUFTA proceeding is the potential clawback? The guarantee claim is a potential clawback. Wait a minute. Is guarantee claim something different than what's referred to as the transfers? The transfers are the money they got in 2005. Those are the transfers. That's the money that came from the notes that was given to the opposite side. That's the transfers. So the first clawback would be if the adversary proceeding by the trustee says those transfers were fraudulent, the trustee gets them back, at which point they want to be able to go against the tribe on various theories to get that money back. So there are two, if you use the term clawback, there are two possible activities. That's true. The fraudulent transfer would be a clawback. But their claim is contingent upon being obligated in the adversary proceeding to return the 2005 transfers to them, at which time they would claim to come back against the tribe under the guarantee. Out of my time, I had one or two minutes that I just wanted to read. First, let's see if my colleagues have any further. So you do argue that the bar order includes both the first clawback, the transfers themselves, and then any subsequent litigation involving the guarantee or anything else, because you say that then arises out of the transfers? I mean, it follows the transfers, but why does it arise out of the transfers? It arises and it relates to the transfers because it is, we are talking about the 2005 transfers, and that is what they are seeking to clawback. But is it flowing from the facts or allegations or claims in the MUFTA adversary proceeding? It is, because the only way that they have a claim under the guarantee arises out of the claims in the MUFTA adversary proceeding. If they are not obligated to return those monies in the MUFTA adversary proceeding, then there is no claim under the guarantee, even if it had been triggered. So again, we sort of have this potential disconnect or analogy that if I have a health insurance contract from 2000, which obliges you to pay if I need a heart transplant, and then the insurance company is related to a bankruptcy in 2005, can you bar me from getting paid for my heart transplant? Would you say, again, I take it you say the court has the power if need be? Yes. Because in order to settle a bankruptcy, the court has the power to bind Trinidad and Tobago. Yes, but again... The bankruptcy court binds all of the world. Right, right. But here we are talking about a specific claim that would not arise but for the alleged MUFTA transfer. They got the money. They are sitting with the money. They don't have a claim under the guarantee. It only arises if they are forced to rescind. I'm beyond my point, but I did have just a couple points on the motion to reconsider, but I will... I think we probably understand that, but let's hear from your colleague because time does pass. Good morning, Your Honors. Joel Applebaum, Clark Hill, on behalf of Lee Buchwald, the litigation distribution trustee. Your Honor, just to correct the record, Ms. Gretchko said that the guarantee was never mentioned until they were present at the hearing, and Mr. Cowan referenced a couple dates, and I just wanted to correct that. Originally, the settlement motion was filed in the bankruptcy court. Subsequently, the reference was withdrawn to the district court. It was in the bankruptcy court on May 29th, in our first page of our brief, that we referenced the guarantee and this indirect benefit theory that I'll get into. On June 21st, in the district court briefs, we again raise the indirect benefit and specifically call out the guarantee and claims under the guarantee, and the hearing in front of Judge Borman in the district court, the evidentiary hearing, was on June 27th. So there was at least a month that they were at least aware, had they read the briefs, and I assume they did. They responded to them about the guarantee. But the fact of the matter is, the reality is that the guarantee has been at the very heart of this adversary proceeding since its inception in May 2010, and I find Pellin's argument that they were unaware of the guarantee singularly incredible. We basically argue that they got the hearing that they were entitled to and they already  But how do you account for the language that Judge Borman used in the order where he, on two occasions, says he doesn't need to have an evidentiary hearing? I actually have difficulty with that language, but I think how I interpret it is that the evidentiary hearing is a requirement under this court's McMahon decision, I think I'm pronouncing it correctly, only where you identify a claim and therefore you need an evidentiary hearing to determine what the impact of a claims bar is on that claim. Judge Borman ruled there was no claims. So they kind of want to have an evidentiary hearing to identify claims. You say they had to have done that at the June 27th hearing, and failing that, they don't then get a separate evidentiary hearing? I think that is exactly right. They have an obligation to come forward. They can't just sit back and throw spaghetti against the wall and hope something sticks. We have a settlement. Settlements are to be encouraged. Claims bars are common where there are multi-defendants and you want a settlement against one, doesn't do much good, no one will be incentivized to settle if the other defendants are still coming after you. And to Judge Boggs' point, I think that there has to be a nexus between the claim and the claims bar. So the Tobago argument, I think, is maybe a little too broad. But my point is that- Does there have to be some mutuality? In other words, the party whose claims are being barred, do they have to get something out of it or can they just simply be left high and dry? Well, I don't think they were left high and dry if they don't come forward and have the claim. If they have to identify claims and get an evidentiary fairness hearing and determine the impact, then I don't think they're left high and dry. But I think in the first instance, as a predicate, you're required to come in and show something. You can't just sit back and say, well, we may have claims, we don't know, but we've been in this case for two years and we've had the guarantee since the year 2000 and we haven't considered whether or not we have claims against this other party. We haven't filed cross-claims. We haven't filed third-party claims. We haven't filed counterclaims. But, oh, by the way, we want to tie this up for some infinite number of days and no one knows how long and therefore stop a settlement because we might hypothetically have, we don't know, claims that we should have decided. These aren't prospective claims. There are no facts that are going to come out that they don't already know about. So there's no prospective event that's going to trigger a sudden claim under a guarantee. They know or they don't and they have an obligation to move forward. I take it correctly that the settlement, I guess because of these appeals, still hasn't gone through. The tribe hasn't paid the money. The estate hasn't gotten the money. That is correct. Are there any other questions from my colleagues? Okay, thank you. Thank you, Your Honor. You'll have your two minutes for rebuttal, Ms. Gretschko. Thank you, Your Honors. I have several points to make on rebuttal. First of all, we need an evidentiary fairness hearing, as he said, to identify the claims. We have to come forward. But discovery is in its early stages despite our constant, unending efforts to get discovery. We've had motions to compel, motions for contempt. We've been stonewalled. Tell me why succinctly you need discovery to determine a claim that you have. Because while the events may have occurred long ago, we don't know the facts surrounding them. The Pappas and Gazzeros defense— Wait a minute. You know whether you have somehow been aggrieved. We don't know whether we—there's a fraud claim, for example. We don't know what was presented to the Michigan Gaming Control Board and what may have been concealed from us that may have caused us to make a different decision. Our clients had different rights. They chose this path as opposed to a different path and may very well have been damaged. Fraudulent concealment, if it occurred, has a two-year statute that hasn't begun to run yet. We haven't seen anything yet. So we do need to finish this— So you're saying there might be fraud, but you don't know about it because otherwise then the time would start to run. Correct. If fraudulent concealment has occurred, if bad information was given to the Gaming Control Board that caused our clients to take this transaction as opposed to force a sale of the casino, which they could have done under a standstill agreement from February of 2005, that would be fraudulent concealment. Our clients could be deeply harmed by this. Second point, they say the guarantee goes to the heart of the argument, but Mr. Applebaum— I'm sorry, the trustee in his brief said on a couple of occasions there exists no contractual indemnity. That's what the guarantee is. They said that here today. On the Mumford case, which Mr.— And let's assume that you don't know the theory upon which you might have a basis of recovery, but surely you know whether you have or have not been injured. If there's been no injury, who cares what potential claims are? We've been injured to the tune of $144 million if we are forced to give back the money, I suppose, if that's the answer to your question. So this all arises out of different theories under which you might be able to recover the $140 million if you're required to pay it back? That's what you want a hearing for? Yes. We believe there's a contribution and an indemnity and that all of those facts need to be developed— But if you're required to pay it back, it all arises out of the MUFTA proceeding, right? If the adversary proceeding arises out of the MUFTA proceeding, yes. So I thought all along the problem here was not the bar order with respect to the claims arising out of the MUFTA proceeding, but rather the fact that you were contending it was too broad. It went beyond that to include other claims, and that's not fair. It's both. We do contend that it goes beyond that to cover contract claims, which is not fair. But even in the context of the MUFTA adversary proceeding, we have the non-settling defendants. They're trying to impose a claims bar on us over our objection without any consideration or protection whatsoever, which in the law of this Sixth Circuit is only— But you do concede that at this point you have not identified a claim, an actual claim. Forget the theoretical claims. I know you've got all kinds of theories. You've not identified an actual claim. We have. What is it? We have said that if we have to disgorge under the MUFTA adversary proceeding, then we will have a claim for $144 million. Based on what? The guarantee would be one. Even though the floors of the guarantee have never been met? That's an issue in dispute. We've not seen the investigative analysis. We don't know that for a fact. Do you have any evidentiary basis other than just supposition to say that the guarantee is true? Discovery is ongoing. Standing here today, I don't have that. Do you have any evidentiary basis today to say the guarantee has been true? Do I have any? Because of the state of discovery, no. All right. Anything else, judges? No. Thank you. Thank you. Thank you, counsel. Case will be submitted. Clerk may call the next case.